```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                                                  :
CHAD KEY, individually and on behalf of all                       :
others similarly situated,                                        :
                                                                  :
                                                                  :    MEMORANDUM DECISION
                                          Plaintiff,              :    AND ORDER
                                                                  :
               - against -                                        :    23-cv-2961 (BMC)
                                                                  :
                                                                  :
HORIZON BANCORP, INC., CRAIG M.                                   :
DWIGHT, and MARK E. SECOR,                                        :
                                                                  :
                                                                  :
                                          Defendants.             :
----------------------------------------------------------------- X
```

**COGAN**, District Judge.

Rarely can a district court dismiss a securities-fraud action by pointing to a single controlling decision. Unfortunately for plaintiffs, that is the case here. Defendants have moved to dismiss plaintiffs' amended complaint, which alleges that defendants made various fraudulent statements about their internal controls. My decision is made simple by <u>New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo</u>, 122 F.4th 28 (2d Cir. 2023) ("<u>DeCarlo</u>"), which considered and rejected near-identical claims. Defendants' motion is accordingly granted.

## BACKGROUND

For most of its 150 years of operation, Horizon Bank was a small community bank in Northwest Indiana. But, over the past decade, the bank and its holding company, defendant Horizon Bancorp, (collectively, "Horizon") rapidly expanded by acquiring a series of other regional banks throughout the Midwest. <u>See</u> Julia Kagan, <u>Bank Holding Company Definition, How It Operates</u>, Investopedia, (September 26, 2024) [https://perma.cc/MPP4-6WVN]. As a result, Horizon quadrupled its assets and total deposits between 2012 and 2022.

Plaintiffs contend that this expansion came with a cost. According to them, Horizon's internal financial-reporting and accounting controls were not calibrated to its new size. Confidential witnesses, low-level employees who worked at regional banks under Horizon's umbrella, testified that Horizon understaffed its accounting and financial reporting divisions, relied on Excel spreadsheets and other "antiquated software," and "failed to provide open lines of communication for employees to relay identified deficiencies and to investigate and remediate already-identified internal control deficiencies." These issues culminated in a misstated figure on Horizon's 2020 Form 10-K; Horizon overreported its "net interest income" by over $5 million.

All the while, Horizon's public filings assured investors that management was conducting regular assessments of its internal controls and had concluded they were effective. Certain statements assured investors that the assessments followed "the criteria set forth in Internal Control – Integrated Framework (2013) issued by the Committee of Sponsoring Organizations (COSO)." Additionally, defendants Craig M. Dwight, Horizon's CEO, and Mark E. Secor, Horizon's CFO, signed special certifications required by the Sarbanes-Oxley Act of 2002, known as "SOX certifications," for many of the filings. SOX certifications attest that the "financial statements, and other financial information included in" each certified filing "fairly present in all material respects the financial condition, results of operations, and cash flows" of the company.

Horizon eventually admitted to its error. In a series of 2023 filings, it disclosed that it misstated its 2020 net interest income, and it disclosed that it consequently discovered weaknesses in its internal controls. Plaintiffs, shareholders of Horizon during the relevant time, filed this suit less than a month later. The operative amended complaint asserts one count of

securities fraud under Section 10(b) of the Exchange Act premised on defendants' allegedly false and misleading pronouncements about Horizon's internal controls.

## DISCUSSION

Rule 10b-5(b), which implements Section 10(b), prohibits two types of conduct. It prohibits making "any untrue statement of a material fact" – *i.e.*, false statements – and it prohibits "omitting a material fact necessary 'to make . . . statements made . . . not misleading'" – *i.e.*, misleading omissions. Macquarie Infrastructure Corp. v. Moab Partners, L.P., 601 U.S. 257, 263 (2024) (second alteration in original) (quoting 17 C.F.R. § 240.10b-5(b)). Many cases describe subjective judgments, like the statements at issue here, as "unactionable" under Rule 10b-5, but that is not strictly speaking true. The Supreme Court has recognized that, although they are not on their face statements of fact, subjective judgments do convey implicit factual assertions which can support false-statement or omission liability. See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund, 575 U.S. 175 (2015).

First, an opinion can constitute a false statement because it conveys that "the speaker actually holds the stated belief," and it can convey certain "embedded statements of fact. Id. at 184. If the speaker does not hold the belief asserted, or if an embedded statement of fact is false, the speaker made an "untrue statement of material fact." 17 C.F.R. § 240.10b-5(b). Second, an opinion can constitute a statement rendered misleading by an omission when it "convey[s] facts about how the speaker has formed the opinion." Omnicare, 575 U.S. at 188. Then, if the speaker "omits material facts about the issuer's inquiry into or knowledge concerning a statement of opinion, and if those facts conflict with what a reasonable investor would take from the statement itself," the speaker omitted a material fact necessary to make the opinion non-misleading. Id.

3

The Second Circuit applied this framework to familiar statements in DeCarlo. There, the plaintiffs brought a Section 10(b) claim, among others, against a defendant insurance company after it restated five years' worth of financial results. They argued that the original misstated financial reports contained several untrue statements of material fact, including the results themselves and, importantly, statements that the company had effective internal controls. Like here, many of the internal-controls statements were SOX certified and represented that the internal controls were evaluated under COSO guidelines. The district court disagreed with the plaintiffs, reasoning that the financial statements were "statements of opinion" because they reflected the judgment of the officers and directors.

Although the Second Circuit recognized that the lower court overlooked embedded factual assertions related to some of the financial results, it affirmed "in substantial part." 122 F.4th at 36. Relevant here, it held that the defendants' attestations to "the effectiveness of the company's disclosure controls and procedures" conveyed only "management's subjective judgments about the company's internal controls." Id. at 47. The attestations were therefore unactionable because plaintiffs did not plausibly allege that management disbelieved its stated judgments or failed to audit the controls at all. Id. At best, the court went on, the SOX certifications suggested that management made some meaningful inquiry into the effectiveness of the controls. But "the Complaint fail[ed] to allege any facts that establish a lack of meaningful inquiry," and thus the company had no duty to disclose. Id.

DeCarlo cuts off plaintiffs' claims at every turn. First, the Second Circuit clearly established that the disclosures on which plaintiffs rely – that management evaluated Horizon's internal controls and concluded they were effective – did not convey that Horizon's internal controls were indeed effective. Instead, they conveyed that Horizon's management subjectively

4

determined that the controls were effective.  To make out a Section 10(b) claim, then, plaintiffs needed to have alleged facts making it plausible (1) that management believed Horizon's internal controls were ineffective, (2) that some embedded factual assertion in the statements were false, or (3) that the statements misled investors as to how management came to its conclusion.  They have not done so.

On the first score, no allegations suggest that defendants lied about their conclusions.  The confidential-witness testimony comes close by detailing the extent to which Horizon's controls systems were failing and that some of the witnesses reported the failings up the appropriate channels.  But there is no indication these complaints ever reached Dwight, Secor, or any other member of Horizon's control group.  One witness reported his concerns to a vice president that reports directly to Secor, but even then, it is still speculative that Secor heard the complaint – no pleaded facts suggest the vice president had to, or did, relay such information to his boss.  The witnesses do "not establish what specific . . . information the . . . Defendants received or when they received it."  Local No. 38 Int'l Bd. of Elec. Workers Pension Fund v. Am. Exp. Co., 724 F. Supp. 2d 447, 461 (S.D.N.Y. 2010).

In fact, much of the testimony indicates the opposite.  The witnesses bemoan that Horizon "failed to provide open lines of communication for employees to relay identified deficiencies and to investigate and remediate already-identified internal control deficiencies" and that management "rebuffed suggestions to upgrade the Company's internal systems because they were 'cost prohibitive.'"  By this account, defendants were unaware of the full extent of Horizon's internal-control failures, leading them to conclude that improvements to the systems were unnecessary.  If true, then Horizon's directors and officers might have failed to exercise proper business-risk oversight, in breach of their Caremark duties to shareholders.  See Wayne

Cnty. Employees' Ret. Sys. v. Dimon, 629 F. App'x 14 (2d Cir. 2015); In re ITT Derivative Litig., 932 N.E.2d 664 (Ind. 2010).  Or they might have even breached their duty of care.  See Ind. Code § 23-1-35-1 (2024).  Bad business judgment, however, does not give rise to a Section 10(b) claim; plaintiffs must point to some false or misleading statement.

Plaintiffs also fail to identify any plausibly false "embedded factual assertion" in the statements.  They do not suggest that defendants failed entirely to assess the efficacy of Horizon's internal controls.  Nor do they provide reason to believe that defendants strayed from the COSO standards.  As they must, they accuse defendants of both in their brief, but there are no non-conclusory allegations in the complaint supporting the accusations.  Their arguments all trace back to the actual internal-control failures.

For the same reason, plaintiffs do not properly plead an omission theory of liability.  Like in DeCarlo, the SOX certifications and allusions to COSO leave the impression that management made some rigorous and formal inquiry into Horizon's internal controls.  Yet no facts contradict a conclusion that defendants made a good faith investigation into Horizon's reporting procedures.  The amended complaint certainly leaves one with the impression that the investigators may have reached the wrong conclusion, but not that they skirted the investigation altogether.

There is one final point I must address.  Sporadically throughout their opposition brief, plaintiffs imply that their claims are based on the erroneous net-interest-income figure too.  This position, however, is unmoored from their amended complaint, which in its section titled "Defendants Make Materially False and Misleading Statements During the Class Period" lists only statements about Horizon's internal controls.  And even if I were to consider this theory, it immediately falls flat.  Plaintiffs allege no non-conclusory facts suggesting that the misstatement

was material – the error did not affect total net income, total assets, total liabilities, statement of cash flows, or equity. Most glaringly, the amended complaint effectively concedes that defendants could not have possessed the requisite scienter. The alleged internal-control failures show that *no one* knew the 10-K misstated net interest income until after publication.

In short, plaintiffs' claims distill down to a "creative attempt to recast corporate mismanagement as securities fraud." Singh v. Cigna Corp., 918 F.3d 57, 59-60 (2d Cir. 2019). Horizon's controls may very well have been deficient, and management may very well have been misguided in determining otherwise. But because plaintiffs cannot locate a false or misleading statement of fact, they have not adequately pled a securities-fraud claim.

## CONCLUSION

Defendants' motion to dismiss is GRANTED.

**SO ORDERED.**

*Brian M. Cogan*
———————————————
U.S.D.J.

Dated: Brooklyn, New York
 April 4, 2025